# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| RANDI L. LEIBER, | : | Case No. 3:19-cv-156 |
| Plaintiff, | : | |
| vs. | : | District Judge Thomas M. Rose |
| | : | Magistrate Judge Sharon L. Ovington |
| COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | : | |
| Defendant. | : | |

# REPORT AND RECOMMENDATIONS[1]

## I.  Introduction

Plaintiff Randi L. Leiber brings this case challenging the Social Security Administration's denial of her application for Supplemental Security Income. She applied for benefits in March 2015, asserting that she could no longer work a substantial paid job. Administrative Law Judge (ALJ) Gregory G. Kenyon concluded that she was not eligible for benefits because she was not under a "disability" as defined in the Social Security Act.

The case is before the Court upon Plaintiff's Statement of Errors (Doc. #8), the Commissioner's Memorandum in Opposition (Doc. #10), and the administrative record (Doc. #7).

---

[1] Attached is a NOTICE to the parties regarding objections to this Report and Recommendations.

Plaintiff seeks a remand of this case for payment of benefits or, at a minimum, for further proceedings. The Commissioner asks the Court to affirm ALJ Kenyon's non-disability decision.

## II. Background

Plaintiff asserts that she has been under a "disability" since July 2010. She was forty-nine years old when she filed her application and was therefore considered a "younger person" under Social Security Regulations. *See* 20 C.F.R. § 416.963(c). She has a limited education. *See id.* § 416.964(b)(3).

The evidence of record is sufficiently summarized in the ALJ's decision (Doc. #5, *PageID* #s 894-909), Plaintiff's Statement of Errors (Doc. #8), and the Commissioner's Memorandum in Opposition (Doc. #10). Rather than repeat these summaries, the pertinent evidence will be discussed when addressing the parties' arguments.

## III. Standard of Review

The Social Security Administration provides Supplemental Security Income to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York,* 476 U.S. 467, 470 (1986); *see* 42 U.S.C. § 1382(a). The term "disability"—as defined by the Social Security Act—has specialized meaning of limited scope. It encompasses "any medically determinable physical or mental impairment" that precludes an applicant from performing a significant paid job—i.e., "substantial gainful activity," in Social Security lexicon. 42 U.S.C. § 1382c(a)(3)(A); *see Bowen,* 476 U.S. at 469-70.

Judicial review of an ALJ's non-disability decision proceeds along two lines: "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007). Review for substantial evidence is not driven by whether the Court agrees or disagrees with the ALJ's factual findings or by whether the administrative record contains evidence contrary to those factual findings. *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). Instead, the ALJ's factual findings are upheld if the substantial-evidence standard is met—that is, "if a 'reasonable mind might accept the relevant evidence as adequate to support a conclusion.'" *Blakley*, 581 F.3d at 407 (quoting *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance . . . ." *Rogers*, 486 F.3d at 241 (citations and internal quotation marks omitted); *see Gentry*, 741 F.3d at 722.

The other line of judicial inquiry—reviewing the correctness of the ALJ's legal criteria—may result in reversal even when the record contains substantial evidence supporting the ALJ's factual findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009); *see Bowen*, 478 F.3d at 746. "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting in part

*Bowen*, 478 F.3d at 746, and citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

## IV. The ALJ's Decision

As noted previously, it fell to ALJ Kenyon to evaluate the evidence connected to Plaintiff's application for benefits. He did so by considering each of the five sequential steps set forth in the Social Security Regulations. *See* 20 C.F.R. § 416.920. He reached the following main conclusions:

Step 1: Plaintiff has not engaged in substantial gainful employment since March 23, 2015.

Step 2: She has the severe impairments of residuals of skin cancer on her left leg, alcoholic liver disease, carpal tunnel syndrome of her left wrist, a history of seizures, an anxiety disorder, a bipolar disorder, and a history of alcohol abuse.

Step 3: She does not have an impairment or combination of impairments that meets or equals the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1.

Step 4: Her residual functional capacity, or the most she could do despite her impairments, *see Howard v. Comm'r of Soc. Sec*., 276 F.3d 235, 239 (6th Cir. 2002), consists of "light work … subject to the following limitations: (1) frequently stooping, crouching, kneeling, and crawling; (2) never climbing ladders, ropes, or scaffolds; (3) no work around hazards such as unprotected heights or dangerous machinery; (4) frequently using the left lower extremity for pushing, pulling, and foot controls; (5) performing indoor work; (6) frequently using left upper extremity for handling and fingering; (7) no driving of automotive equipment; (8) performing unskilled, simple, repetitive tasks; (9) occasional superficial contact with coworkers and supervisors (superficial contact is defined as retaining the ability to receive simple instructions, ask simple questions, and receive performance appraisals, but lacking the ability to engage in more complex social interactions such as persuading other people or rendering advice); (10) no public contact; (11) no fast-paced production work or strict production quotas; and, (12) limited to

>> performing jobs which involve very little, if any, change in the job duties or the work routine from one day to the next."

Step 4: She has no past relevant work.

Step 5: She could perform a significant number of jobs that exist in the national economy.

(Doc. #7, *PageID* #s 53-69). These main findings led the ALJ to ultimately conclude that Plaintiff was not under a benefits-qualifying disability. *Id.* at 68.

**V.     Discussion**

Plaintiff contends that the ALJ erred in his assessment of Dr. Firmin's opinion and erred in denying her request to submit interrogatories to Dr. Schulz. The Commissioner maintains that substantial evidence supports the ALJ's decision.

**A.     Dr. Firmin's Opinion**

Michael W. Firmin, Ph.D., evaluated Plaintiff in October 2015 and provided both a narrative report and a mental functional capacity assessment.[2] In the latter, he indicated that Plaintiff was moderately limited in her ability to understand, remember, and carry out detailed instructions; maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; work in coordination with or proximity to others without being distracted by them; complete a normal workday and workweek without interruptions from psychologically-based symptoms and to perform at a consistent pace without an

---

[2] As the ALJ accurately observed, Dr. Firmin's narrative report is "largely illegible." (Doc. #&, *PageID* #57). The ALJ accordingly assigned it "little weight." Plaintiff does not argue that the ALJ erred in finding it "largely illegible."

5

unreasonable number and length of periods; interact appropriately with the general public; maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness; and travel in unfamiliar places or use public transportation. (Doc. #7, *PageID* #582). Dr. Firmin indicated that Plaintiff was not significantly limited in the remaining functional areas. *Id.*

      The ALJ found that Dr. Firmin's opinions—that Plaintiff had moderate limitations as the result of her bipolar disorder, anxiety disorder, and alcohol dependence—were consistent with the record and "fully accommodated in the mental residual functional capacity discussed below. *Id.* at 58.

      Plaintiff asserts that Dr. Firmin's opined limitations were not "fully accommodated" by the ALJ's hypothetical question to the vocational expert. (Doc. #8, *PageID* #s 886-88). She points to the expert's testimony at the supplemental hearing where, in response to Plaintiff's counsel's questions, the vocational expert testified that when she responded to the ALJ's hypothetical questions she assumed the ability to maintain attention and concentration and to maintain a schedule were intact. Moreover, Plaintiff asserts that "[f]urther questioning [of the vocational expert] revealed that the residual functional capacity did not address [Plaintiff's] limited ability to complete a normal workday or workweek, or her limited ability to complete simple tasks." *Id.* at 888 (citation omitted).

      Although there are some small differences between the ALJ's residual functional capacity assessment and Dr. Firmin's opinion, Plaintiff's argument nevertheless lacks

6

merit. The ALJ reasonably interpreted Dr. Firmin's opinion given that the only legible portion of his opinions consists of checkmarks with no explanation.

Plaintiff appears to overlook that Dr. Firmin also opined that she was not significantly limited in several areas. For example, although he found that she was moderately limited in her ability to understand, remember, and carry out detailed instructions, he found that she was not significantly limited in her ability to understand, remember, and carry out simple instructions. (Doc. #7, *PageID* #582). Thus, the ALJ's conclusion that Plaintiff is limited to simple tasks fully accommodated Dr. Firmin's opinion.

The record-reviewing psychologists' opinions support the ALJ's findings as there are significant similarities between Dr. Firmin's opinions and theirs. For example, the record-reviewing psychologists opined that Plaintiff had moderate limitations in her ability to maintain attention and concentration for extended periods and to complete a normal workday or workweek without interruptions from psychologically-based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. *Id.* at 261. But the record-reviewing psychologists also provided additional explanations. They opined that, despite her limitations, Plaintiff retained the ability to perform simple, routine tasks without high production quotas. *Id.*

The ALJ reasonably found that Dr. Firmin's opinions were consistent with the record and, to accommodate Plaintiff's moderate limitations, included restrictions in his hypothetical/residual functional capacity assessment—to unskilled, simple, repetitive tasks, no fast-paced production-oriented work or strict production quotas.

7

B.     **Interrogatory Requests**

Plaintiff asserts that the ALJ erred in denying her request to submit interrogatories to examining psychologist George O. Schulz, Ph.D. Dr. Schulz examined Plaintiff in September 2015 and diagnosed panic disorder, unspecified depressive disorder, unspecified alcohol-related disorder, and borderline intellectual functioning. *Id.* Dr. Schulz opined that Plaintiff "is capable of making her own choices concerning mental health treatment and medical care" and that her "judgment appears sufficient to make her own life decisions regarding managing funds and accessing basic resources." *Id.* at 842. Additionally, "She is expected to be able to understand and apply instructions in the work setting within the borderline range of intellectual functioning." *Id.* at 842-43. Plaintiff "is mentally capable of completing routine or repetitive ADL tasks both at home and in the community or on a job setting. However, … she is likely to experience some objective performance concerns by employers." *Id.* She is likely to have some difficulties in responding to coworkers and supervisors in a work setting. *Id.* at 843. Dr. Schulz opined that she "is likely to have difficulty responding appropriately to work pressure." *Id.*

ALJ Kenyon assigned Dr. Schulz's evaluation "moderate weight." *Id.* at 57. The ALJ found that Dr. Schulz's opinions—that Plaintiff might experience some deficits in attention, concentration, persistence, and pace; social functioning; and stress tolerance—were consistent with treatment records and, accordingly, added appropriate limitations to his residual functional capacity assessment.

8

Plaintiff asserts that Dr. Schulz's opinions are ambiguous and not quantifiable—specifically, his opinion concerning work pressures. (Doc. #8, *PageID* #s 884-85). In March 2018, Plaintiff requested that the ALJ submit interrogatories to Dr. Schulz. The ALJ denied the request and, in April 2018, Plaintiff asked the ALJ to subpoena Dr. Schulz for cross-examination at the supplemental hearing. (Doc.# 7, *PageID* #164). The ALJ denied that request as well. Five months later, at the supplemental hearing, when the ALJ asked about the requested interrogatories, Plaintiff's counsel responded that they "may be rendered moot if there's going to be a consultative examination depending on what he does or doesn't do." *Id.* at 134. Plaintiff's counsel did not set forth any other reasons for sending interrogatories to Dr. Schulz. However, he did explain that another examination was necessary because it had been almost three years since the Dr. Schulz's consultative exam and as such, "there is no good evaluation of her mental status currently or for the past three years." *Id.*

ALJ Kenyon, in his decision, denied Plaintiff's request for another consultative examination because "[m]ental health records … do not show there has been any material deterioration in the claimant's level of mental functioning since … the date of Dr. Schulz's examination." *Id.* at 57. Plaintiff mistakenly asserts that the ALJ denied her requests for interrogatories based on the lack of deterioration of her mental health. This is not so. The ALJ did not specifically respond to Plaintiff's request that interrogatories be sent Dr. Schulz.

Plaintiff argues the ALJ erred in refusing to submit interrogatories to Dr. Schulz. She asserts that, without interrogatory responses, the ALJ could not definitively account for Dr. Schulz's opined limitations. (Doc. #8, *PageID* #s 884-85). Although not explicitly stated in these terms, the crux of Plaintiff's argument seems to be that the ALJ's refusal to send interrogatories violated her right to due process.

"Due process requires that a social security hearing be 'full and fair.'" *Flatford v. Chater*, 93 F.3d 1296, 1305 (6th Cir. 1996) (quoting *Richardson v. Perales,* 402 U.S. 389, 401-02, 91 S.Ct. 1420, 1427, (1971)). To be full and fair, "[a] claimant must have the opportunity to present all of his evidence and to confront the evidence against him." *Id.* at 1307. But a social security claimant does not have an absolute right to cross-examination. *Id*. Instead, "due process required that social security claimant have the opportunity to cross-examine a reporting physician where reasonably necessary …" to fully and fairly develop the record. *Id.* at 1307.

Similarly to cross-examination, interrogatories "provide a meaningful opportunity for a disability claimant to confront evidence he believes to be adverse to his claim." *Id.* at 1306. ALJs may send interrogatories upon their own initiative or at the claimant's request. *Bowie v. Comm'r of Soc. Sec.*, 539 F.3d 395, 397 (6th Cir.2008); The Hearings, Appeals and Litigation Law Manual (HALLEX) I-2-5-42. The decision to submit interrogatories generally falls within the discretion of the ALJ. *See Coleman v. Berryhill*, 376 F.Supp.3d 799, 805 (M.D. Tenn. March 22, 2019); *Harriman v. Comm'r of Soc. Sec.*, 2:16cv514, 2017 WL 4250072, *5 (S.D. Ohio Sept. 26, 2017) (Marbley, C.J.).

Plaintiff asserts that interrogatories were reasonably necessary to fairly and fully develop the record because Dr. Schulz's opinions were ambiguous and not quantifiable. In support of this, she points to testimony from the vocational expert.  According to Plaintiff, "It was not until the level of stress was quantified that the vocational expert was able to properly answer the hypothetical question."  (Doc. #8, *PageID* #883).  Plaintiff refers to the following discussion with the vocational expert:

> Q  Okay.… all jobs involve some degree of work stress, either the stress in getting up and getting to work, doing the work, doing it right even at the simple/unskilled level?
>
> A  Stress is something that people perceive personally, I don't know if I could answer that for you.
>
> Q  Okay.  If an individual has, 15 percent of the day, problems in coping with the stress of either getting up and getting to work or completing the tasks accurately/adequately for employment, does that allow competitive employment?
>
> A  I guess, counsel, the question would be is how does that 15 percent translate vocationally?  I mean, would they be off task or –
>
> Q  Yeah, 15 percent of the time they're off task or complete the task incorrectly.
>
> A  Okay.  In that case, with that understanding, I believe that to be work-preclusive as well.

(Doc. #7, *PageID* #s 163-64).  But this exchange does not support Plaintiff's argument. The Commissioner correctly points out that the vocational expert did not actually testify about Dr. Schulz's opinion "likely because he was not actually questioned about Dr. Schulz's opinion…."  (Doc. #10, *PageID* #903).  Instead, Plaintiff's counsel asked him about stress in work generally.  To the extent Plaintiff's counsel sought the vocational

11

expert's analysis of Dr. Schulz's opinion, vocational experts are not responsible for evaluating medical evidence or determining an individual's residual functional capacity. *See* HALLEX I-2-5-48 ("20 C.F.R. § 416.946(c).

Notably, two state agency psychologists reviewed and interpreted Dr. Schulz's opinion. Neither indicated that it was ambiguous. Instead, both assigned it "other weight" because Dr. Schulz relied heavily on Plaintiff's statements and "her statements can be inconsistent." (Doc.#7, *PageID* #s 257, 275).

Plaintiff asserts that the present case is analogous to *Harriman v. Comm'r of Soc. Sec.*, 2:16cv514, 2017 WL 2821704 (S.D. Ohio June 30, 2017) (Jolson, M.J.) *Report and Recommendation adopted* 2017 WL 4250072 (S.D. Ohio Sept. 26, 2017) (Marbley, D.J.). In that case, the ALJ referred Plaintiff for a consultative exam after the hearing. When the medical source statement was completed, the plaintiff requested that the ALJ send interrogatories or a subpoena to the examining consultant. The ALJ denied the plaintiff's request because he found that the interrogatories submitted by Plaintiff were not in compliance with HALLEX. The court found that the ALJ's denial was based on a factual misunderstanding and ALJ error. The court pointed out that the ALJ relied heavily on the physician's opinion and was the only examining physician's opinion that the ALJ did not discredit. The court concluded that the plaintiff's proposed post-hearing interrogatories were reasonably necessary to fully and fairly develop the record.

The present case is distinguishable from *Harriman*. In *Harriman*, the plaintiff was examined after the hearing. By comparison, Dr. Schulz examined Plaintiff almost three years before the supplemental hearing (two years before the first hearing). As the court

recognized in *Harriman*, a claimant's opportunity to cross-examine a reporting physician is "particular[ly] pertinent when the reporting physician's examination is conducted post-hearing, because 'when evidence is gathered post-hearing at the initiation of the [ALJ] a heightened danger exists that the claimant may not have the opportunity to cross-examine the physician if needed." *Harriman*, No. 2:16-CV-00514, 2017 WL 4250072, at *5 (quoting *Flatford*, 93 F.3d at 1307).

Further, the plaintiff in *Harriman* requested that interrogatories be sent upon receiving the medical source statement. In the present case, Plaintiff did not request the interrogatories be submitted until two and a half years after the examination. Given the significant length of time, it is not likely that Dr. Schulz would be able to recall Plaintiff's examination. Further, while the ALJ in *Harriman* relied heavily on the examiner's opinion, ALJ Kenyon assigned Dr. Schulz "moderate weight."

Plaintiff also takes issue with the ALJ's evaluation of Dr. Schulz's opinion. Plaintiff contends that, without interrogatory responses, the ALJ could not have found it consistent with other evidence or account for Dr. Schulz's opinions. Plaintiff insists that the ALJ failed to explain how he calculated the severity of Dr. Schulz's opinions or how those limitations translated into the those set forth in the residual functional capacity. (Doc. #8, *PageID* #885). Plaintiff's argument lacks merit. The ALJ—albeit later in his decision—discusses how he assessed the evidence and accounted for Plaintiff's limitations. For instance, at Step Three, the ALJ considered Dr. Schulz's opinion when he determined that Plaintiff's ability to concentrate, persist, or maintain pace is moderately limited:

13

> When interviewed by Dr. Schulz, the claimant reported difficulties with focusing as a basis for her inability to work. Fund of knowledge[,] [a]bility to abstract[,]… [and] [i]ntellectual functioning was estimated in the borderline range. She does not know the amount of time she can pay attention; she does not follow written or spoken instructions well. Her hobbies and interests include reading magazines, books, or newspapers, listening to the radio, and watching television. All of these activities require some degree of concentration. In the opinion of Dr. Schulz, the claimant is able to make important decisions about her future and live independently. Dr. Schulz found that the claimant has the capacity to complete routine or repetitive tasks.

(Doc. #7, *PageID* #60) (internal citations omitted). And the ALJ also considered the opinions of examining consultant Dr. Firman and record-reviewing psychologists Dr.Murry-Hoffman and Dr. Tangeman:

> According to Dr. Firmin, Dr. Murry-Hoffman, and Dr. Tangeman, the claimant's ability to maintain concentration and attention for extended periods, to work in coordination with or in proximity to others without being distracted, to carry out detailed instructions and to work a normal workday without interruptions from her mental health conditions are "moderately" limited. However, they also concluded that the claimant is capable of sustaining simple, rote tasks without high production quotas.

*Id.* Thus, the ALJ concluded, "In view of the claimant's history of alcohol use and seizures as well as her mental health symptoms, it appears reasonable to find she might possibly become preoccupied or experience some degree of difficulty sustaining concentration, especially in stressful situations." *Id.* This shows that how the ALJ considered Dr. Schulz's opinions in conjunction with the other relevant evidence.

Later in his decision, the ALJ also provides some additional explanation for how this translates to limitations in his assessment of her residual functional capacity. For

14

example, he found, "Symptoms of anxiety and bipolar disorder are likely to hinder her ability to attend for long periods and carry out detailed instructions.  Therefore, she should not be expected to work in settings requiring fast-paced production or strict production quotas.  She is limited to performing jobs which involve very little, if any, change in the job duties or the work routine from one day to the next to account for the possibility that stress may exacerbate her mental health symptoms or trigger alcohol abuse." *Id.* at 65.

Plaintiff has failed to show that her proposed interrogatories were reasonably necessary to develop a fair and full record.  Accordingly, the ALJ did not abuse his discretion in denying Plaintiff's requests to submit interrogatories to Dr. Schulz.

**IT IS THEREFORE RECOMMENDED THAT**:

1. The ALJ's non-disability decision be affirmed; and

2. The case be terminated on the Court's docket.

June 25, 2020                                  *s/Sharon L. Ovington*
                                               Sharon L. Ovington
                                               United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).